| STATE OF ILLINOIS | ) |
|---|---|
| | ) ss |
| COUNTY OF COOK | ) |

CHARGE NO. 2019CF1525

## AFFIDAVIT OF SERVICE

Veronica Lewis, deposes and states that she served a copy of the attached **NOTICE OF DISMISSAL FOR LACK OF SUBSTANTIAL EVIDENCE** on each person named below by depositing the same this 30th day of January, 2020, in the U.S. Mail Box at 100 West Randolph Street, Chicago, Illinois, properly posted for FIRST CLASS MAIL, addresses as follows:

| | |
|---|---|
| Jeanete Samuels | Michael J. Hayes, Jr. |
| Samuels & Associates, Ltd. | Odelson & Sterk, Ltd. |
| 2925 S. Wabash | 3318 W. 95th St. |
| Suite 164 | Evergreen Park, IL 60805 |
| Chicago, IL 60616 | |

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that she verily believes the same to be true.

_Veronica Lewis_
Veronica Lewis

**PLEASE NOTE:**

The above-signed person is responsible only for <u>mailing</u> these documents. If you wish a review of the findings in this case, you must complete the Request for Review form attached. Illinois Department of Human Rights staff are not permitted to discuss the investigation findings once a Notice of Dismissal has been issued.



DEFENDANT
EXHIBIT
F

## STATE OF ILLINOIS
## DEPARTMENT OF HUMAN RIGHTS

IN THE MATTER OF:

KYUNG PALMER,

    COMPLAINANT,

AND

CITY OF MARKHAM POLICE DEPARTMENT,

    RESPONDENT.

CHARGE NO. 2019CF1525
EEOC NO. 21BA90800

## NOTICE OF DISMISSAL
## FOR LACK OF SUBSTANTIAL EVIDENCE

Jeanete Samuels
Samuels & Associates, Ltd.
2925 S. Wabash
Suite 164
Chicago, IL 60616

Michael J. Hayes, Jr.
Odelson & Sterk, Ltd.
3318 W. 95th St.
Evergreen Park, IL 60805

DATE OF DISMISSAL: **January 30, 2020**

1. YOU ARE HEREBY NOTIFIED that based upon the enclosed investigation report, the Department has determined that there is NOT substantial evidence to support the allegation(s) of the charge. Accordingly, pursuant to Section 7A-102(D) of the Act (775 ILCS 5/1-101 et seq.) and the Department's Rules and Regulations (56 Ill. Adm. Code. Chapter II, §2520.560) the charge is HEREBY DISMISSED.

2. If Complainant disagrees with this action, Complainant may:

    a) Seek review of this dismissal before the Illinois Human Rights Commission (Commission), 100 West Randolph Street, Suite 5-100, Chicago, Illinois, 60601, by filing a "Request for Review" with the Commission by the request for review filing date below. Respondent will be notified by the Commission if a Request for Review is filed.

### REQUEST FOR REVIEW FILING DEADLINE DATE: May 4, 2020

    Or, Complainant may:

    b) Commence a civil action in the appropriate state circuit court within ninety (90) days after receipt of this Notice. A complaint should be filed in the circuit court in the county where the civil rights violation was allegedly committed.

> If you intend to exhaust your State remedies, please notify the Equal Employment Opportunity Commission (EEOC) immediately. The EEOC generally adopts the Department's findings. The Appellate Courts in <u>Watkins v. Office of the State Public Defender,</u> ___ Ill.App.3d ___, 976 N.E.2d 387 (1st Dist. 2012) and <u>Lynch v. Department of Transportation,</u> ___ Ill.App.3d ___, 979 N.E.2d 113 (4th Dist. 2012), have held that discrimination complaints brought under the Illinois Human Rights Act ("IHRA") against the State of Illinois <u>in the Illinois Circuit Court</u> are barred by the State Lawsuit Immunity Act. (745 ILCS 5/1 et seq.). Complainants are encouraged to consult with an attorney prior to commencing a civil action in the Circuit Court against the State of Illinois.

**PLEASE NOTE: The Department cannot provide any legal advice or assistance. Please contact legal counsel, your city clerk, or your county clerk with any questions.**

3. Complainant is hereby notified that the charge(s) will be dismissed with prejudice and with no right to further proceed if a timely request for review is not filed with the Commission, or a timely written complaint is not filed with the appropriate circuit court.

4. If an EEOC charge number is cited above, this charge was also filed with the Equal Employment Opportunity Commission (EEOC). If this charge alleges a violation under Title VII of the Civil Rights Act of 1964, as amended, or the Age Discrimination in Employment Act of 1967, Complainant has the right to request EEOC to perform a Substantial Weight Review of this dismissal. Please note that in order to receive such a review, it must be requested in writing to EEOC within fifteen (15) days of the receipt of this notice, or if a request for review is filed with the Human Rights Commission, within fifteen days of the Human Rights Commission's final order. Any request filed prior to your receipt of a final notice WILL NOT BE HONORED. Send your request for a Substantial Weight Review to **EEOC, John C. Kluczynski Federal Building, 230 South Dearborn Street, Suite 1866, Chicago, Illinois 60604.** Otherwise, EEOC will generally adopt the Department of Human Rights' action in this case.

**PLEASE NOTE: BUILDING SECURITY PROCEDURES PRESENTLY IN PLACE DO NOT PERMIT ACCESS TO EEOC WITHOUT AN APPOINTMENT. IF AN APPPOINTMENT IS REQUIRED, CALL (312) 869-8000.**

                        DEPARTMENT OF HUMAN RIGHTS
                        James L. Bennett
                        Director

# STATE OF ILLINOIS
# DEPARTMENT OF HUMAN RIGHTS
# INVESTIGATION REPORT

**Complainant:** Kyung Palmer  
**Respondent:** City of Markham Police Department  

**IDHR No.:** 2019CF1525  
**EEOC No.:** 21BA90800  

**Investigator:** ETM   **Supervisor:** MQL/_MM_   **Date:** /-23-2020

## Issue/Basis:

## Finding:

A. Reduction in hours/Sex, female  
B. Involuntary schedule change/Sex, female  
C. Unequal terms and conditions of employment/ Sex, female  
D. Denial of paid compensatory time off/Sex, female

A. Lack of Substantial Evidence  
B. Lack of Substantial Evidence  
C. Lack of Substantial Evidence  
D. Lack of Substantial Evidence

## Jurisdiction:

Alleged violations:

A. October 18, 2018  
B. October 18, 2018  
C. October 1, 2018 through March 2019  
D. December 21, 2018 through March 2019  

Charge filed: March 14, 2019  
Charge perfected: March 14, 2019  
Amendments: None  
Number of employees: 41

## Employment Data:

Respondent's 2019 Roster **(Exhibit A)** indicates that Respondent employed 41 individuals, of whom three (3) (7%) were within Complainant's job category of Part-Time Police Officer, of whom one (1) (33%) was within Complainant's protected category of sex, female. The roster indicates that Respondent employed a total of seven (7) (17%) individuals who were in Complainant's protected category of sex, female.

## Uncontested Facts:

1. Respondent is the municipal police department for the City of Markham, a southern suburb of Chicago within Cook County, Illinois.

2. On December 21, 2009, Respondent hired Complainant as a Part-Time Patrol Officer.

3. Terry White ("White") (male), Chief of Police was Complainant's supervisor during the relevant period.

4. Eric Blohm ("Blohm") (male), Lieutenant, was Complainant's immediate supervisor during the relevant period.

5.      Complainant was not in a union.

### Complainant's Allegations-Count A:

Complainant, a Part-Time Patrol Officer, alleges that on October 18, 2018, Respondent reduced her hours because of her sex, female. Complainant alleges that on December 21, 2009, Respondent hired her as a Part-Time Patrol Officer. Complainant alleges that at all relevant times she met Respondent's expectations/her job performance was satisfactory. Complainant alleges that on October 18, 2018, Terry White, Chief of Patrol, reduced her hours from 32 or more hours per week to 24 hours per week. Complainant alleges that Respondent treated a similarly situated Part-Time Patrol Officer, Gerald Jackson ("Jackson") (male), more favorably under similar circumstances.

### Respondent's Defenses-Count A:

Respondent's articulated legitimate non-discriminatory reason for reducing Complainant's hours was to comply with State of Illinois regulations. Respondent admits to knowledge of Complainant's sex. Respondent admits that on December 21, 2009, it hired Complainant as a Part-Time Patrol Officer. Respondent denies that Complainant met their expectations/her job performance was satisfactory. Respondent denies that it treated similarly situated male Part-Time Police Officers more favorably under similar circumstances.

### Investigation Summary-Count A:

**A.    Complainant's Evidence.**

1. Complainant stated that on December 21, 2009, Respondent hired her as a part-Time Patrol Officer.

2. Complainant stated that Terry White, Chief of Police, was her supervisor.

3. Complainant stated that Eric Blohm, Lieutenant, was her immediate supervisor.

4. Complainant stated that her job duties included: securing a senior building after it closed; securing city hall; ensuring that the Mayor was secure; and monitoring the local skating rink to make sure that no fights broke out and the children were safe at all times.

5. Complainant stated that she was not in a union.

6. Complainant stated that Respondent employed seven Patrol Officers, of whom three were female.

7. Complainant stated that she worked the day shift, beginning at 7:45a.m., until 4:00p.m.

8. Complainant stated that she requested to work the day shift due to her family obligations/childcare considerations.

9. Complainant stated that Part-Time Patrol Officers could work up to 32 hours per week.

10. Complainant stated that in or around 2015, Mack Sanders ("Sanders") (male) then-Police Chief, guaranteed all Part-Time Police Officers 32 hours per week.

11. Complainant stated that White, the current Police Chief, stated the he does not think women should be police officers. Complainant could not specify when this occurred.

12. Complainant stated that White had been overheard stating that women are dumb. Complainant could not specify when this occurred.

13. Complainant stated that on October 18, 2018, her hours were reduced.

14. Complainant's Web Time Sheet **(Exhibit B)** indicates the following:
    - Beginning on September 2, 2018, until September 15, 2018, Complainant worked 29 hours the first week and 29 the second, totaling 58 hours.
    - Beginning on September 30, 2018, until October 13, 2018, Complainant worked 29 hours the first week and 29 the second, totaling 58 hours.
    - Beginning on October 14, 2018, until October 27, 2018, Complainant worked 29 hours the first week and 29 the second, totaling 58 hours.
    - On October 18, 2018, Complainant worked eight (8) hours.
    - Beginning on October 28, 2018, until November 10, 2018, Complainant worked 24.75 hours the first week and 24.75 the second, totaling 49.5 hours.

15. Complainant stated that she was the only Part-Time Police Officer whose hours were reduced.

16. Complainant stated that on October 18, 2018, White increased Jackson's hours.

B. **Respondent's Evidence.**

1. White stated that Respondent prohibits sex-based discrimination.

2. Respondent's September 15, 2011, General Order 16.2 **(Exhibit C)** indicates that it prohibits anyone from taking any adverse action based on sex and other protected characteristics.

3. White stated that he is responsible for the overall operations of Respondent.

4. Respondent's September 15, 2011, General Order 3.1 **(Exhibit D)** indicates that the Chief of Police is responsible for the planning, budgeting, staffing, directing, coordinating, and controlling of all of Respondent's functions and activities.

5. Blohm stated that on December 30, 2009, Respondent hired Complainant as a Part-Time Patrol Officer.

6. Respondent's December 30, 2009, Letter to Complainant **(Exhibit E)** indicates the following:
    - December 21, 2009 was Complainant's hire date.
    - Respondent hired Complainant as a Part-Time Patrol Officer.
    - Complainant's rate of pay was $14 per hour.
    - Complainant was not in a union.
    - Complainant was not eligible for the benefits of a full-time Patrol Officer.
    - Complainant's employment with Respondent was at-will.

7. Respondent's September 15, 2011, General Order 39.1 **(Exhibit F)** indicates the following:
    - Part-Time Officers function in support of community policing and support service activities including: traffic direction, business and residential walking patrols, and assigned police duties.
    - The chain of command consists of the Chief through a single subordinate of each level of command.
    - Part-Time Officers have no implied benefits other than those approved by contractual agreement and/or with the approval of the Chief of Police.
    - All Part-Time Officers are required to be available to work a minimum of hours per week, determined by the Chief of Police.

8. Respondent's copy of Illinois Code of Ordinances **(Exhibit G)** indicates the following:
    - Part-Time Officers shall serve when called upon by the Mayor or Chief of Police.
    - Part-Time Officers shall work no more than 30 hours per week, or as may be regulated by statute.

9. Respondent's copy of Joint Committee on Administrative Rules Administrative Code **(Exhibit H)** indicates the following:

- Full-Time Officers are defined as working more than 1,560 hours per twelve-month period beginning on the first January of any calendar year.

- Part-Time Officers are defined as working 1,560 hours or less per twelve-month period beginning on the first January of any calendar year.

10. White stated that he has been with Respondent for 29 years. White stated that in or around 2013, he began supervising Complainant. White stated that on October 3, 2018, he was promoted to Chief of Police. White stated that on October 3, 2018, the administrative code required that Respondent be compliant with the law. White stated that the code mandated that Part-Time Officers can only max out at 29 hours per week and are not eligible for overtime.

11. White stated that in or around October 2018, Complainant was at 29 hours per week.

12. Respondent's Bates-stamped document (**Exhibit I**) indicates the following before and after October 2018:
    - Jackson worked 29 hours per week.

    - Complainant worked 32 before and 24 after.

    - Derrick Singleton ("Singleton") (male), Part-Time Officer, worked 24 before and 24 after.

    - Fernando Valenzuela ("Valenzuela") (male), Part-Time Officer, worked 24 hours before and 24 after.

**Staff Note:**

On March 18, 2019, and September 17, 2019, staff requested documentation that shows the hours worked for its Officers during the relevant time period. Respondent has not provided the requested documentation.

13. White stated that Complainant worked part-time security at Walmart. White stated that he notified Complainant that she was supposed to work based on the needs of Respondent. White stated that Jackson got a "crappy deal" because he had to work a split shift on Saturday, afternoons, and mornings. White stated that Complainant was strictly working days because she could not work any other shift on account of child care issues, but she worked at Walmart on weekends and evenings.

14. Blohm stated that he has been with Respondent for eight years and in or around 2018, he was promoted to lieutenant. Blohm stated that Respondent's General Orders indicate that Part-Time Officers are maxed out at 29-30 hours. Blohm stated that work hours are based on the needs of Respondent. Blohm stated that Complainant's schedule was set based on the needs of Respondent. Blohm stated

that Respondent tried to get everyone hours. Blohm stated that Complainant notified Respondent that she could not work a lot of hours because of her child care issues and her Walmart job.

16. White stated that Complainant notified Respondent that she hated working the roller rink detail. White stated that Complainant had not worked there since in or around 2017.

17. Respondent's October 14, 2018, through October 20, 2018, schedule **(Exhibit J)** indicates the following:
    - Respondent assigned five (5) offers per day on the day shift.
    - Respondent assigned seven (7) officers for its afternoon shift.
    - Respondent assigned six (6) to nine (9) officers for its night shift.
    - Complainant worked the day shift, Valenzuela worked afternoons, Singleton worked midnights, and Jackson worked afternoon and midnights.
    - Complainant worked 32 hours.
    - Valenzuela worked 24 hours.
    - Singleton worked 24 hours.
    - Jackson worked 32 hours, which included 8 hours at the roller rink.

18. Respondent's October 21, 2018, through October 27, 2018, schedule *(Exhibit J)* indicates the following:
    - Complainant worked the day shift, Valenzuela worked afternoons, Singleton worked midnights, and Jackson worked afternoons and midnights.
    - Complainant worked 32 hours.
    - Valenzuela worked 24 hours.
    - Singleton worked 24 hours.
    - Jackson worked 32 hours which included 8 hours at the roller rink.

19. Respondent's October 28, 2018, through November 3, 2018, schedule *(Exhibit J)* indicates the following:
    - Complainant worked the day shift, Valenzuela worked afternoons, Singleton worked midnights, and Jackson worked afternoon and midnights.
    - Complainant worked 24 hours.

- Valenzuela worked 24 hours.

- Singleton worked 24 hours.

- Jackson worked 32 hours which included 8 hours at the roller rink.

C. **Complainant's Rebuttal.**

1. Complainant maintains that Respondent cut her hours due to an anti-female animus in that her fellow Part-Timer, Jackson, had his hours increased while hers were decreased.

### Analysis-Count A:

There is no evidence that Respondent reduced Complainant's hours because of her sex. Respondent's General Order 16.2 **(Exhibit C)** indicates that it prohibits anyone from taking any adverse action based on sex. Documented evidence **(Exhibit E)** shows that on December 30, 2009, Respondent hired Complainant as a Part-Time Patrol Officer, and she was not a member of a union. Respondent's General Order 39.1 **(Exhibit F)** shows that: Part-Time Officers have no implied benefits other than those approved by contractual agreement and/or with the approval of the Chief of Police, and all Part-Time Officers are required to be available to work a minimum of hours per week, determined by the Chief of Police. Respondent's Illinois Code of Ordinances **(Exhibit G)** shows that Part-Time Officers shall work no more than 30 hours per week, or as may be regulated by statute. Respondent's Joint Committee on Administrative Rules Administrative Code **(Exhibit H)** shows that Part-Time Officers are defined as working 1,560 hours or less per twelve-month period beginning on the first January of any calendar year. Documented evidence **(Exhibit B)** shows that beginning on September 2, 2018, until October 27, 2018, Complainant worked 29 hours per week, on October 18, 2018, Complainant worked eight (8) hours, and beginning on October 28, 2018, until November 10, 2018, Complainant worked 24.75 hours the first week and 24.75 the second. Documented evidence **(Exhibit J)** shows that Respondent assigned five (5) officers per day on the day shift; assigned seven (7) officers for its afternoon shift; and assigned six (6) to nine (9) officers for its night shift.

Documented evidence *(Exhibit J)* shows that before and after October 2018: Jackson worked 32 hours per week, which included an additional shift at the roller rink, Derrick Singleton ("Singleton") (male), worked 24 before and 24 after, and Fernando Valenzuela ("Valenzuela") (male), worked 24 hours before and 24 after, and October 14, 2018, through October 27, 2018, Complainant worked 32 hours and October 28, 2018, through November 3, 2018, Complainant worked 24. Documented evidence *(Exhibit J)* shows that Respondent assigned an additional full-time officer on the day shift.

### Findings and Conclusion-Count A:

A finding of **Lack of Substantial Evidence** is recommended because:

The evidence shows that Respondent reduced Complainant's hours because it assigned a full-time officer to work the day shift on Thursdays, which was consistent with its General Orders 3.1, 39.1,

and its Joint Committee on Administrative Rules Administrative Code. Documented evidence **(Exhibits B and J)** indicated that beginning on October 14, 2014, until October 27, 2018, Complainant worked 32 hours per week on the day shift, eight more hours than two other Part-Time male Officers. The evidence shows that after October 27, 2018, Complainant's hours were reduced by eight hours due to Respondent adding a Full-Time Officer on Thursdays. The evidence shows that Jackson's hours were not increased, but rather, they stayed the same and he worked two different shifts. The evidence shows that Complainant's hours were reduced to the same as two Part-Time male Officers who did not work split shifts or have an additional duty like Jackson. The evidence does not show that Respondent's operational needs were not the reasons for its scheduling practices. There is no evidence of an animus based on sex in how officers were scheduled. There is no substantial evidence that Respondent reduced Complainant's hours based on her sex. Complainant has failed to establish a *prima facie* case of sex-based discrimination.

### Complainant's Allegations-Count B:

Complainant alleges that on October 18, 2018, Respondent involuntarily changed her schedule because of her sex, female. Complainant alleges that at all relevant times she met Respondent's expectations/her job performance was satisfactory. Complainant alleges that on October 18, 2018, Terry White, Chief of Patrol, involuntarily changed her scheduled days from Monday, Tuesday, Wednesday, and Thursday, to Wednesday, Thursday, and Friday. Complainant alleges that Respondent treated a similarly situated Part-Time Patrol Officer, Gerald Jackson ("Jackson") (male), Part-Time Patrol Officer, under similar circumstances.

### Respondent's Defenses-Count B:

Respondent's articulated legitimate non-discriminatory reason for changing the schedule was that all Part-Time officer assignments are at the discretion of Respondent, as well as due to Complainant's poor job performance, and her assignment requests to allow her to work a second, outside job. Respondent admits to knowledge of Complainant's sex. Respondent denies that Complainant met their expectations/performed satisfactorily. Respondent denies that it treated similarly situated male Part-Time Officers more favorably under similar circumstances.

### Investigation Summary-Count B:

A.  **Complainant's Evidence.**

    1.  See Investigation Summary, Count A, Complainant's Evidence.

    2.  Complainant stated that on October 18, 2018, White took special work details away from her and gave them to Jackson. Complainant could not specify what special work details were taken from her on October 18, 2018.

    3.  Complainant stated that in or around 2016, Respondent took the City Hall detail away from her.

    4.  Complainant stated that White told her that if she did not like the schedule change, "you don't have to work here."

5. Complainant stated that she notified White that she did not want to work the roller rink. Complainant stated that nobody wanted to work the roller rink.

6. Complainant's October 18, 2018, Memorandum **(Exhibit K)** indicates that Complainant notified Respondent that she was available to work Monday through Thursday, beginning at 7:45a.m., until 4:00p.m.

7. Complainant stated that she wanted to work the City Hall detail. Complainant stated that she had the right to work city hall because it was during her shift hours.

8. Complainant stated that White can exchange shifts of Part-Time Officers when he wants to.

B. **Respondent's Evidence.**

1. See Investigation Summary, Count A, Respondent's Evidence.

2. White stated that all Part-Time Officer assignments are at the discretion of himself or his command staff *(Exhibits D and F)*.

3. White stated that he did not remove Complainant from the City Hall detail. White stated that other city workers were complaining about Complainant. White stated that Complainant was never at her duty station and was always on her cell phone. White stated that Respondent received numerous citizen and worker complaints against Complainant. White stated that in or around 2016, City Hall passed a resolution to separate Complainant from Raquel Dawson ("Dawson") (female"), Full-Time Officer, at City Hall, due to ongoing acrimony between Complainant and Dawson.

4. Respondent's October 18, 2016, Counseling **(Exhibit L)** indicates that Jack Genius ("Genius") (male), then-Deputy Chief of Police, ordered Complainant to stay away from Dawson.

5. White stated that in or around 2016, his predecessor, Genius, removed Complainant from the City Hall detail and placed her on patrol.

6. White stated that Complainant's poor performance within certain assignments prevented her from continuing to work in those assignments.

7. Blohm stated that during her employment with Respondent, Complainant made certain assignment requests *(Exhibit K)* to allow her to work a second outside job.

8. White stated that in or around 2017, Complainant notified Respondent that she hated the Roller Rink.

9. Blohm stated that in or around 2017, Complainant notified Respondent that she hated the Roller Rink and had not worked there since 2017.

C. **Complainant's Rebuttal.**

 1. Complainant stated that Jackson was given her shift because he paid into the Mayor and White's campaign.

**Analysis-Count B:**

There is no evidence that Respondent involuntarily changed Complainant's schedule because of her sex. Respondent's General Order 16.2 (**Exhibit C**) indicates that it prohibits anyone from taking any adverse action based on sex. Documented evidence (**Exhibit E**) shows that on December 30, 2009, Respondent hired Complainant as a Part-Time Patrol Officer, and she was not a member of a union. Respondent's General Order 39.1 (**Exhibit F**) shows that: Part-Time Officers have no implied benefits other than those approved by contractual agreement and/or with the approval of the Chief of Police, and all Part-Time Officers are required to be available to work a minimum of hours per week, determined by the Chief of Police. Respondent's Illinois Code of Ordinances (**Exhibit G**) shows that Part-Time Officers shall work no more than 30 hours per week, or as may be regulated by statute. Respondent's Joint Committee on Administrative Rules Administrative Code (**Exhibit H**) shows that Part-Time Officers are defined as working 1,560 hours or less per twelve-month period beginning on the first January of any calendar year. Documented evidence (**Exhibit J**) shows that Respondent assigned five (5) offers per day on the day shift; assigned seven (7) officers for its afternoon shift; and assigned six (6) to nine (9) officers for its night shift.

It was uncontested that in or around 2016, Respondent removed Complainant from the City Hall detail. Respondent maintains that in or around 2016, it removed Complainant from the City Hall detail to separate her from another female Officer with whom she was having conflict (**Exhibit L**), 877 days before she filed the instant charge. Documented evidence *(Exhibit J)* shows that before and after October 2018: Jackson worked 32 hours per week, which included an additional shift at the roller rink, Derrick Singleton ("Singleton") (male), worked 24 before and 24 after, and Fernando Valenzuela ("Valenzuela") (male), worked 24 hours before and 24 after, and October 14, 2018, through October 27, 2018, Complainant worked 32 hours and October 28, 2018, through November 3, 2018, Complainant worked 24. Documented evidence *(Exhibit J)* shows that Respondent assigned an additional full-time officer on the day shift. Documented evidence (**Exhibit K**) indicates that Complainant notified Respondent that she was only available to work Monday through Thursday, beginning at 7:45a.m., until 4:00p.m. Documented evidence (**Exhibit J**) indicates that the roller rink detail was on Saturdays. Documented evidence (**Exhibit J**) indicates that no detail was taken away from Complainant and given to Jackson, but rather, Complainant continued to perform patrol duties.

**Findings and Conclusion-Count B:**

A finding of **Lack of Substantial Evidence** is recommended because:

The evidence shows that Respondent removed Complainant from the City Hall detail because of a conflict she had with a Full-Time female officer, which was consistent with its General Orders 3.1, 39.1, and its Joint Committee on Administrative Rules Administrative Code. It was uncontested that Respondent removed Complainant from the City Hall detail 877 days before she

filed the instant charge. Complainant failed to provide any evidence that Respondent removed her from any detail during the relevant time period. Documented evidence **(Exhibit J)** indicates that no detail was taken away from Complainant, but rather, Complainant continued to perform patrol duties. There is no evidence of an animus based on sex. There is no substantial evidence that Respondent reduced Complainant's hours based on her sex. Complainant has failed to establish a *prima facie* case of sex-based discrimination.

### Complainant's Allegations-Count C:

Complainant, a Part-Time Patrol Officer, alleges that on October 18, 2018, and continuing until March 14, 2019, Respondent subjected her to unequal terms and conditions of employment because of her sex, female. Complainant alleges that at all relevant times she met Respondent's expectations/her job performance was satisfactory. Complainant alleges that Respondent subjected her to unequal terms and conditions of employment by removing her from the special detail at City Hall and the Roller Rink. Complainant alleges that Respondent treated a similarly situated Part-Time Patrol Officer, Gerald Jackson ("Jackson") (male), Part-Time Patrol Officer, under similar circumstances.

### Staff Note:

Complainant's current allegation, that Respondent subjected her to unequal terms and conditions of employment based on her sex by removing her from city hall detail, mirrors the allegations in Count B, where Complainant alleged that her hours were reduced, as the reduction was directly resulting from the circumstances surrounding the lack of city hall and roller rink details, discussed in Count B.

### Respondent's Defenses-Count C:

Respondent denies having subjected Complainant to unequal terms and conditions of employment or otherwise treating Complainant adversely based on her sex. Respondent denies that Complainant met their expectations/her performance was satisfactory. Respondent denies that it treated similarly situated male Part-Time Officers more favorably that Complainant under similar circumstances.

### Investigation Summary-Count C:

A. **Complainant's Evidence.**

   1. See Investigation Summary, Counts A and B, Complainant's Evidence.

B. **Respondent's Evidence.**

   1. See Investigation Summary, Counts A and B, Respondent's Evidence.

C. **Complainant's Rebuttal.**

> 1. Complainant did not provide any evidence other than what was provided in counts A and B.

### Analysis-Count C:

There is no evidence that Respondent subjected Complainant to unequal terms and conditions of employment because of her sex. Respondent's General Order 16.2 **(Exhibit C)** indicates that it prohibits anyone from taking any adverse action based on sex. Documented evidence **(Exhibit E)** shows that on December 30, 2009, Respondent hired Complainant as a Part-Time Patrol Officer, and she was not a member of a union. Respondent's General Order 39.1 **(Exhibit F)** shows that: Part-Time Officers have no implied benefits other than those approved by contractual agreement and/or with the approval of the Chief of Police, and all Part-Time Officers are required to be available to work a minimum of hours per week, determined by the Chief of Police.

Respondent's Illinois Code of Ordinances **(Exhibit G)** shows that Part-Time Officers shall work no more than 30 hours per week, or as may be regulated by statute. Respondent's Joint Committee on Administrative Rules Administrative Code **(Exhibit H)** shows that Part-Time Officers are defined as working 1,560 hours or less per twelve-month period beginning on the first January of any calendar year. Documented evidence **(Exhibit J)** shows that Respondent assigned five (5) offers per day on the day shift; assigned seven (7) officers for its afternoon shift; and assigned six (6) to nine (9) officers for its night shift.

It was uncontested that in or around 2016, Respondent removed Complainant from the City Hall detail. Respondent maintains that in or around 2016, it removed Complainant from the City Hall detail to separate her from another female Officer with whom she was having conflict **(Exhibit L)**, 877 days before she filed the instant charge. Documented evidence *(Exhibit J)* shows that before and after October 2018: Jackson worked 32 hours per week, which included an additional shift at the roller rink, Derrick Singleton ("Singleton") (male), worked 24 before and 24 after, and Fernando Valenzuela ("Valenzuela") (male), worked 24 hours before and 24 after, and October 14, 2018, through October 27, 2018, Complainant worked 32 hours and October 28, 2018, through November 3, 2018, Complainant worked 24. Documented evidence *(Exhibit J)* shows that Respondent assigned an additional full-time officer on the day shift. Documented evidence **(Exhibit K)** indicates that Complainant notified Respondent that she was only available to work Monday through Thursday, beginning at 7:45a.m., until 4:00p.m. Documented evidence **(Exhibit J)** indicates that the roller rink detail was on Saturdays'. Documented evidence **(Exhibit J)** indicates that no detail was taken away from Complainant and given to Jackson, but rather, Complainant continued to perform patrol duties.

### Findings and Conclusion-Count C:

A finding of **Lack of Substantial Evidence** is recommended because:

The evidence shows that Respondent removed Complainant from the City Hall detail because of a conflict she had with a Full-Time female officer, which was consistent with its General Orders 3.1, 39.1, and its Joint Committee on Administrative Rules Administrative Code. It was uncontested that Respondent removed Complainant from the City Hall detail 877 before she filed the instant charge. Complainant failed to provide any evidence that Respondent removed her from

any detail during the relevant time period. Documented evidence **(Exhibit J)** indicates that no detail was taken away from Complainant, but rather, Complainant continued to perform patrol duties. As with claims based on harassment, claims based on unequal terms and conditions of employment must also be so severe or pervasive as to alter the terms and conditions of employment. It must be more than merely disruptive. the incidents alleged by Complainant do not rise to the level of actionable harassment nor different terms and conditions of employment under the Act because they were not so severe and pervasive as to alter the terms and conditions of Complainant's employment. There is no evidence of an animus based on sex. There is no substantial evidence that Respondent reduced Complainant's hours based on her sex. Complainant has failed to establish a *prima facie* case of sex-based discrimination.

### Complainant's Allegations-Count D:

Complainant, a Part-Time Patrol Officer, alleges that on December 21, 2018, and continuing until March 20, 2019, Respondent denied her paid compensatory time because of her sex, female. Complainant alleges that at all relevant times she met Respondent's expectations/her job performance was satisfactory. Complainant alleges that Terry White, Chief of Patrol, denied her the use of 80 hours of earned compensatory time off but allowed her to take unpaid leave. Complainant alleges that Respondent treated a similarly situated Part-Time Patrol Officer, Derick Singleton ("Singleton") (male), Part-Time Patrol Officer, under similar circumstances.

### Respondent's Defenses-Count D:

Respondent's articulated legitimate non-discriminatory reason for denying Complainant compensatory time was because she did not have any such compensatory time and was only eligible for unpaid leave. Respondent admits knowledge of Complainant's sex. Respondent denies that Complainant met their expectations/her job performance was satisfactory. Respondent denies that it treated similarly situated male Part-Time Officers more favorably under similar circumstances.

### Investigation Summary-Count D:

A. **Complainant's Evidence.**

1. See Investigation Summary, Counts A and B, Complainant's Evidence.

2. Complainant stated that in or around December 2018, she had 80 hours of compensatory time and Chief White would not let her use it. Complainant stated that White told her "he is the new sheriff in town" and would not allow her to use or build up her compensatory time. Complainant stated that White did not mention her sex during this conversation.

3. Complainant's Web Time Sheet *(Exhibit B)* indicates the following:
   - Beginning on September 3, 2018, and continuing until November 14, 2018, Complainant used 57.75 hours of compensatory time.

B. **Respondent's Evidence.**

1. See Investigation Summary Counts A and B, Respondent's Evidence.

2. White stated that Respondent possess no records that shows that Complainant possessed any compensatory time beginning on December 21, 2018, until March 20, 2019. White stated that unpaid leave was Complainant's only available option.

3. Respondent's May 1, 2014, through March 20, 2019, Time Detail Report (**Exhibit M**) indicates the following:
    - Beginning in or around Respondent's fiscal year 2014, through 2015, Complainant banked 0 compensatory hours and used 35.

    - Beginning in or around Respondent's fiscal year 2015, through 2016, Complainant banked 75 compensatory hours and used 95.5.

    - Beginning in or around Respondent's fiscal year 2016, through 2017, Complainant banked 69 compensatory hours and used 268.75.

    - Beginning in or around Respondent's fiscal year 2017, through 2018, Complainant banked 96 compensatory hours and used 217.5.

    - Beginning in or around Respondent's fiscal year 2018, through 2019, Complainant banked 48 compensatory hours and used 112.75.

    - Beginning in or around Respondent's fiscal year 2019, through 2020, Complainant banked 0 compensatory hours and used 0.

C. **Complainant's Rebuttal.**

1. Complainant did not provide any evidence other than what was provided in Complainant's Evidence Section.

### Analysis-Count D:

There is no evidence that Respondent denied Complainant compensatory time. Respondent's General Order 16.2 (**Exhibit C**) indicates that it prohibits anyone from taking any adverse action based on sex. Documented evidence (**Exhibit E**) shows that on December 30, 2009, Respondent hired Complainant as a Part-Time Patrol Officer, and she was not a member of a union. Respondent's General Order 39.1 (**Exhibit F**) shows that: Part-Time Officers have no implied benefits other than those approved by contractual agreement and/or with the approval of the Chief of Police, and all Part-Time Officers are required to be available to work a minimum of hours per week, determined by the Chief of Police. Documented evidence (**Exhibit B**) shows that beginning on September 3, 2018, and continuing until November 14, 2018, Complainant requested, and Respondent granted her the use of 57.75 hours of compensatory time. Complainant failed to provide any documentation to show that she had any compensatory time available during the

applicable time period. Documented evidence **(Exhibit M)** shows that beginning on December 21, 2018, until March 20, 2019, Complainant did not have any compensatory time available. Complainant has not shown that a similarly situated male was treated more favorably under similar circumstances.

### Findings and Conclusion-Count D:

A finding of **Lack of Substantial Evidence** is recommended because:

The evidence shows that Respondent denied Complainant the use of compensatory time because Complainant did not have any available; Complainant provided no evidence showing that she had available compensatory time as alleged. The evidence shows that Respondent granted Complainant the use of her compensatory time when she had it to use **(Exhibit B)**. Documented evidence **(Exhibit M)** shows that beginning on December 21, 2018, until March 20, 2019, Complainant did not have any compensatory time available. There is no evidence of an animus based on sex; there is no evidence that a similarly situated male employee was treated more favorably under similar circumstances. There is no substantial evidence that Respondent denied Complainant's compensatory time based on her sex. Complainant has failed to establish a *prima facie* case of sex-based discrimination.

### Witness List:

A.  Complainant (CPI)
    A Part-Time Officer
    C/o Jeanete Samuels, Attorney
    Samuels and Associates Ltd.
    2925 S. Wabash, Suite 164
    Chicago, IL. 60616
    (872) 544-4726

B.  Terry White (male) (Witness Interview, 10/31/19)
    Chief of Patrol, Respondent
    C/o Michael J. Hayes, Jr.
    Odelson & Sterk, Ltd.
    3318 West 95th Street
    Evergreen Park, IL. 60805
    (708) 424-5678

C.  Eric Blohm (male) (Witness Interview, 10/31/19)
    Lieutenant, Respondent
    C/o Michael J. Hayes, Jr.
    Odelson & Sterk, Ltd.
    3318 West 95th Street
    Evergreen Park, IL. 60805
    (708) 424-5678

D.  James Walker Sergeant/Former Deputy Chief, Respondent (No contact made)

**Staff Note:**

Complainant's correspondence named Walker as a witness. Complainant maintains that Walker "was advised verbally on several occasions about the hostile treatment I have received by Terry White. Knowledge about Chief White would harass me [and] retaliate against me." On September 17, 2019, staff requested that Respondent provide Walker for an interview. Respondent did not provide Walker for an interview.

E.   Mack Sanders, Former Chief                    (No contact made)

**Staff Note:**

Complainant's correspondence named Sanders as a witness. Complainant maintains that Sanders could attest that "between 03/2018 – 09/2018 he was advised verbally and was shown video of what happened. He stated that I was making his head hurt and I just need to take it and I should be happy that I still got a job." On September 17, 2019, staff requested that Respondent provide Sanders for an interview. Respondent did not provide Sanders for an interview.

F.   Harlen Lewis, Officer                          (No contact made)

**Staff Note:**

Complainant's correspondence named Lewis as a witness. Complainant maintains that Lewis "was in roll call when Chief White was calling the women dumb and stupid." On September 17, 2019, staff requested that Lewis appear for an interview. Lewis has not contacted the Department.

**Exhibits:**

A.   Respondent's 2019 Roster.
B.   Complainant's Web Time Sheet.
C.   Respondent's September 15, 2011, General Order 16.2.
D.   Respondent's September 15, 2011, General Order 3.1.
E.   Respondent's December 30, 2009, Letter to Complainant.
F.   Respondent's September 15, 2011, General Order 39.1.
G.   Respondent's Illinois Code of Ordinances.
H.   Respondent's Joint Committee on Administrative Rules Administrative Code.
I.   Respondent's Bates-stamped document.
J.   Respondent's October 28, 2018, through November 3, 2018, schedule.
K.   Complainant's October 18, 2018, Memorandum.
L.   Respondent's October 18, 2016, Counseling.
M.   Respondent's May 1, 2014, through March 20, 2019, Time Detail Report.

IRSHELL
Rev 11/09