IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Kyung Palmer, | ) |
|         Plaintiff, | ) ) ) Case No. 20 CV 2603 |
| v. | ) ) Judge Joan B. Gottschall |
| City of Markham and Terry White, | ) ) |
|         Defendants. | ) ) |

## ORDER

After she was terminated in 2019 from her job as a part-time police officer for the City of Markham, Illinois ("the City"), plaintiff Kyung Palmer ("Palmer"), a woman, filed this lawsuit against the City and its male police chief, Terry White ("White"), alleging a claim of sex discrimination under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.*; a Title VII retaliation claim; and an Illinois law claim for intentional infliction of emotional distress ("IIED"). *See* Am. Compl. ¶¶ 18–32, ECF No. 34. Before the court are motions for summary judgment filed by the City and White. For the following reasons, the court grants summary judgment on Palmer's IIED claim. The court does not reach the Title VII claims because Palmer must receive an opportunity to respond to evidentiary objections raised for the first time in defendants' reply.

    I.    **Summary Judgment Standard and Fact Statements**

  *A.* ***Summary Judgment Standard***

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To show that a fact cannot be or is genuinely disputed, a party may cite "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ.

P. 56(c)(1)(A); *see also* Fed. R. Civ. P. 56(c); N.D. Ill. LR 56.1.  A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  At summary judgment, "facts must be viewed in the light most favorable to," and all reasonable inferences from the evidence must be drawn in favor of, the nonmoving party—but "only if there is a genuine dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quotation omitted).

After "a properly supported motion for summary judgment is made, the adverse party must" go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (quotation omitted).  Thus, summary judgment is warranted when the nonmoving party cannot establish an essential element of its case on which it will bear the burden of proof at trial. *Kidwell v. Eisenhauer*, 679 F.3d 957, 964 (7th Cir. 2012).

### B. Fact Statements and Legal Memoranda

By order dated February 24, 2023, the court struck the parties' first round of summary judgment memoranda and fact statements for multiple, serious violations of this court's Local Rule 56.1.  *See Palmer v. City of Markham*, No. 20-CV-2603, order at 1–5 (N.D. Ill. Feb. 24, 2023) (ECF No. 113).  The February 24 order's discussion of the purpose and requirements of LR 56.1, *see id.* at 1–2, will not be repeated here except to note that the court has determined that LR 56.1 should be enforced strictly in this case.  *Id.* at 4.

The second round of summary judgment briefs and fact statements rectify many of the issues with the first.  Three issues must be briefly addressed.

First, the court disregards defendants' direct citations to summary judgment exhibits in their memoranda of law and reply briefs.  *See* City Mem. Supp. Mot. Summ. J. 4, 5, 6, 9, 10, 12, 14, 16, 17, ECF No. 118-2; City Reply 6, 8, 9, 10, 11, 12, 15, 16, 18, ECF No. 136; White Reply 5, 6, ECF No. 137.  As previously explained, "Mixing citations to the summary judgment evidence and LR 56.1 fact statements is prohibited because it frustrates . . . the purposes of the rule and because it makes the opposing party's job of responding to a factual position difficult." *Palmer*, order at 3 (citing *Magee v. McDonald's Corp.*, 2019 WL 10447014, at *4 (N.D. Ill.

2

Mar. 28, 2019)). Many of defendants' direct citations to summary judgment evidence must be disregarded for the additional reason that they appear for the first time in a reply brief. "[A]rguments raised for the first time in [a] reply brief are waived because they leave no chance to respond." *White v. United States*, 8 F.4th 547, 552 (7th Cir. 2021) (citing *Wonsey v. City of Chicago*, 940 F.3d 394, 398 (7th Cir. 2019); other citation omitted); *see Physicians Healthsource, Inc. v. A-S Medication Sols., LLC*, 950 F.3d 959, 968 (7th Cir. 2020).

Second, the parties argue that the evidence cited in certain paragraphs of the LR 56.1 fact statements does not adequately support the factual proposition for which it is cited. *See, e.g.*, City Reply 4–5, ECF No. 136; White Reply 4–6, ECF No. 137. "[T]o the extent the Court relies on them in its analysis of the . . . summary judgment [motions], it evaluates whether the statements of fact and responses thereto are supported by specific record evidence and considers them accordingly." *Astellas US Holding, Inc. v. Starr Indem. & Liab. Co.*, 566 F.Supp.3d 879, 893 (N.D. Ill. 2021), *aff'd sub nom. Astellas US Holding, Inc. v. Fed. Ins. Co.*, 66 F.4th 1055 (7th Cir. 2023); *see also Landry v. Abbott Lab'ys*, 2020 WL 1848209, at *4–5 (N.D. Ill. Apr. 13, 2020).

Finally, the parties object that certain evidence cited in the LR 56.1 fact statements is vague, irrelevant, or immaterial. *See* Pl. Resp. to City Stmt. Mat. Facts ("Resp. to City SMF") ¶¶ 4, 14, 67, ECF No. 127; Resp. to SAF ¶¶ 7, 8, 9, 24, 25–35, 37, ECF No. 136-1. "To the extent necessary, the court makes relevance and materiality determinations in its analysis of the specific issues to which the evidence is alleged to be material. *Spiegel v. EngageTel Inc.*, 372 F.Supp.3d 672, 677 (N.D. Ill. 2019) (Gottschall, J.) (citing *Rivera v. Guevara*, 319 F.Supp.3d 1004, 1019 (N.D. Ill. 2018)).

## II. Summary Judgment Facts and Evidence

The City hired Palmer as a part-time police officer in 2010.[1] *See* Resp. to City SMF 6, ECF No. 127. Part-time officers were assigned hourly shifts as needed. *Id.* ¶ 8. The parties agree that a city ordinance and a general order of the City of Markham's police department stated that part-time officers were permitted to work no more than 30 hours per week. *See id.* ¶¶ 9–10. Despite these written policies, it is undisputed that, under the regime of the City's former police chief, "part-time employees were given time off to compensate them for overtime that they worked, *i.e.* 'banked' time." Def. Resp. to Pl. Stmt. Add'l Facts ("Resp. to Pl. SAF"), ECF No. 136-1 (undisputed portion; citations omitted).

White was appointed as police chief in October 2018. Resp. to City SMF ¶ 5; Resp. to Pl. SAF ¶ 23. White had been with the City of Markham Police Department since the early 1990s in various roles, though there was a break in his service from 2005–13. *See* Resp. to City SMF ¶ 5; Resp. to Pl. SAF ¶ 23. Palmer filed two charges of discrimination with the Illinois Department of Human Rights in December 2019 and March 2020 respectively. Resp. to City SMF ¶ 2 (citing charges, Def. Ex. D, E, ECF Nos. 87-5, 87-6).

Palmer's claims stem from actions allegedly taken by, and statements allegedly made by, White and other police department personnel after White's appointment. The actions and statements about which Palmer complains include reducing her weekly hours from 32 to 24. *See* Resp. to City SMF ¶ 15. White testified that he reduced part-time officers' hours and eliminated "banked time" in order to bring the department's practices into compliance with the law. *See id.* ¶ 20 (citing White Dep. 88–89, Def. Ex. B, ECF No. 87-3).

Palmer maintains that, notwithstanding White's testimony, he took this and other actions for discriminatory and retaliatory reasons. Among other evidence, Palmer points to her deposition testimony that White arbitrarily enforced rules; that in particular he allowed a male part-time police officer, Gerald Jackson ("Jackson"), to work overtime and allowed him to

---

[1] Although Palmer's hiring date is undisputed, it is cited inconsistently in this record. In its answers to interrogatories the City lists Palmer's hiring date as December 21, 2009. Pl. Ex. 6 at 6, ECF No. 99-6.

4

"bank" time; and that Palmer overheard White say on an unspecified date that he did not think women should be police officers. *See id.* ¶¶ 15, 20, 29, 72, 73. Palmer also cites evidence that White involuntarily transferred her to a less desirable work schedule, which conflicted with her childcare obligations (White had allegedly been informed of the conflict); that White removed her from desirable assignments and in some instances replaced her with a male police officer; and that she was not permitted to participate in an active shooter drill. *Id.* ¶¶ 2, 20, 30–59, 67–70. White denies any discriminatory motive and denies making the discriminatory statements attributed to him. *Id.* ¶¶ 14, 58, 71, 76.

Palmer was terminated on July 3, 2019. The termination letter signed by White states that Palmer's position was eliminated due to city budget cuts. Resp. to City SMF ¶ 6 (citing letter, Def. Ex. L, ECF No. 87-13); *see also id.* ¶ 63. Palmer cites evidence she contends creates a factual dispute over whether Jackson was terminated on the same date or instead was, as Palmer asserts, hired as a full-time officer. *See id.* ¶ 66. Palmer testified that she believes that she was more qualified than Jackson to be a full-time police officer. Resp. to City SMF ¶¶ 27-29.

To show that there is a genuine factual dispute over whether defendants' explanations for the foregoing actions are pretextual, Palmer relies on evidence of what she characterizes as "other bad acts," by which she means evidence of allegedly discriminatory and retaliatory treatment of other female police officers. *See* Resp. to Pl. SAF ¶¶ 25–35. As discussed below, defendants object to this evidence as irrelevant, unduly prejudicial, and inadmissible under Rule § 404(b) of the Federal Rules of Evidence. *See id.* Rule 404(b) provides in pertinent part, "Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1) (2023). Such other acts evidence may nevertheless "be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *Id.* R. 404(b)(2).

### III. Title VII Claims (Counts I and II)

Palmer brings her Title VII claims against the City only. Am. Compl. ¶¶ 19–29, ECF No. 34. Title VII forbids an "employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Title VII separately prohibits retaliation: "It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment . . . because he has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e-3(a). Case law divides unlawful employment practices into two categories: (1) "intentional discrimination (known as 'disparate treatment')" claims and (2) "practices that are not intended to discriminate but in fact have a disproportionately adverse effect on minorities (known as 'disparate impact')." *Ricci v. DeStefano*, 557 U.S. 557, 577 (2009). Palmer pleads disparate treatment claims here, *i.e.*, claims that she was treated less favorably than male coworkers. *See* Am. Compl. ¶¶ 19–29.

To survive summary judgment on her disparate treatment claims, Palmer must come forward with sufficient evidence to permit a reasonable fact finder to conclude that her "employer had a discriminatory motive for taking a job-related action." *Ernst v. City of Chicago*, 837 F.3d 788, 794 (7th Cir. 2016); *accord. Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 716 (7th Cir. 2012); *see also Ortiz v. Werner Eterns., LLC*, 834 F.3d 760, 765–66 (7th Cir. 2016). Indeed, for a disparate treatment claim, "Proof of discriminatory motive is critical, although it can in some situations be inferred from the mere fact of differences in treatment." *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 335 n.15 (1977).

Palmer and the City are at issue over the discriminatory motive or intent element of Palmer's Title VII claims. The City argues in its opening memorandum that Palmer cannot produce evidence sufficient to create a genuine dispute on this element of her claims. City Mem. Supp. Mot. Summ. J. 2-15, ECF No. 118-2. In response, Palmer relies primarily on evidence of what she characterizes as "other bad acts" allegedly perpetrated by defendants. *See* Pl. Jt. Resp.

6

Opp'n Summ. J. 9–11, ECF No. 132.  This evidence of other acts, Palmer argues, creates a genuine fact issue as to whether the reasons given by White for allegedly adverse employment actions, such as Palmer's termination, are pretexts for a discriminatory or retaliatory motive. *See, e.g.*, *id*.; Resp. to City SMF ¶¶ 21, 23–24, ECF No. 127.  Specifically, Palmer points to evidence she contends shows that the City treated other female police officers poorly, such as the alleged demotion of a female detective to a patrol position and her replacement by a male officer; the decision to eliminate a school resource officer role held by a female police officer and transfer the officer to the midnight–8 a.m. shift; and an alleged incident in which a female police officer was forced to use a police car with a non-functional two-way radio, even though a car with a working radio was available.  *See id*. at 10–11 (citations omitted).

      The City devotes the first five pages of its reply brief to objecting to Palmer's other bad acts evidence.  ECF No. 136 at 1–5.  It contends that this evidence is irrelevant, Fed. R. Evid. 801; is more prejudicial than probative, Fed. R. Evid. 403; and is inadmissible under Fed. R. Evid. 404(b).  *Id.* (citing *Moorhouse v. Boeing Co.*, 501 F. Supp. 390, 393 (E.D. Pa. 1980)).  The City's objections would ordinarily be deemed waived because the City raised them for the first time in its reply.  *See, e.g.*, *United States v. Williams*, 85 F.4th 844, 849 (7th Cir. 2023), *cert. denied,* 2024 WL 899404 (U.S. Mar. 4, 2024) (citing *White v. United States*, 8 F.4th 547, 552 (7th Cir. 2021)).  This waiver rule is intended to avoid an ambush in a reply brief because introducing an argument at the reply stage "leave[s] no chance to respond."  *White*, 8 F.4th at 552 (citing *Wonsey v. City of Chicago*, 940 F.3d 394, 398 (7th Cir. 2019); other citation omitted).  But disregarding the City's objections to Palmer's other acts evidence would be unfair here because Palmer introduced this evidence into the summary judgment briefing with her response, making the City's reply its first reasonable opportunity to raise an objection.  *See In re Horlbeck*, 653 B.R. 410, 417–18 (N.D. Ill. 2023).  Seventh Circuit law dictates how to proceed in these circumstances:

> District courts abuse their discretion when they deny a party a chance to respond to new arguments or facts raised for the first time in a reply brief in support of a motion for summary judgment and subsequently enter judgment on the basis

>of those new arguments or facts. *See Dr. Robert L. Meinders, D.C., Ltd. v. UnitedHealthcare, Inc.*, 800 F.3d 853, 858 (7th Cir. 2015) ("the district court deprived Meinders due process by entering judgment against him on law and facts to which he did not have a full and fair opportunity to respond"); *see also Black v. TIC Inv. Corp.*, 900 F.2d 112, 116 (7th Cir. 1990) ("Where new evidence is presented in a reply to a motion for summary judgment, the district court should not consider the new evidence without giving the movant an opportunity to respond.").

*Physicians Healthsource, Inc. v. A-S Medication Sols., LLC*, 950 F.3d 959, 968–69 (7th Cir. 2020); *see also Costello v. Grundon*, 651 F.3d 614, 635 (7th Cir. 2011).

Accordingly, Palmer must be given an opportunity to respond to the City's objections to her other acts evidence. And because Palmer relies heavily on the objected-to evidence as support for her factual position resisting summary judgment on her Title VII claims, the court cannot reach those claims until the City's objections have been fully briefed. The court therefore authorizes further briefing and does not reach Palmer's Title VII claims at this time.

### IV. Intentional Infliction of Emotional Distress Claim

"Under Illinois law, a plaintiff may recover damages for intentional infliction of emotional distress only if she establishes that (1) the defendant's conduct was truly extreme and outrageous; (2) the defendant intended to inflict severe emotional distress (or knew that there was at least a high probability that its conduct would cause severe emotional distress); and (3) the defendant's conduct did in fact cause severe emotional distress." *Richards v. U.S. Steel*, 869 F.3d 557, 566 (7th Cir. 2017) (citing *Feltmeier v. Feltmeier*, 798 N.E.2d 75, 80 (Ill. 2003)).

Defendants seek summary judgment on Palmer's IIED claim on two, independent grounds. They first argue that Palmer cannot come forward with sufficient evidence to create a fact issue for trial on each element of her IIED claim. White Mem. Supp. Mot. Summ. J. 6–15, ECF No. 119. Second, defendants contend that the Illinois Human Rights Act ("IHRA"), 775 Ill. Comp. Stat. §§ 5/2-101 *et seq.*, preempts Palmer's IIED claims. *Id.* at 5–6. Because they are dispositive, the court reaches only defendants' preemption arguments.

The IHRA prohibits, *inter alia*, employment discrimination based on a person's sex, sexual harassment, and retaliation. *See* 775 Ill. Comp. Stat. §§ 5/1-103(Q), 5/2-102(A), 5/2-102(D), 5/2-101(E), 5/6-101(A); *Richards*, 869 F.3d at 553 (discussing these prohibitions

and definitions in detail). The IHRA also includes what is commonly referred to as a preemption provision: "Except as otherwise provided by law, no court of this state shall have jurisdiction over the subject of an alleged civil rights violation other than as set forth in this Act." 775 Ill. Comp. Stat. § 5/8-111(D). This provision requires tort claims, such as a claim for intentional infliction of emotional distress, that are properly characterized as "the 'subject' of an alleged 'civil rights violation' [to] be heard under the procedures of the [Human Rights] Act." *Richards*, 869 F.3d at 563.

To decide whether the IHRA preempts Palmer's IIED claim, the court asks whether her IIED claim "is inextricably linked to allegations of sexual harassment," that is, "whether the plaintiff can establish a basis for imposing liability on defendants . . . without reference to the legal duties created by the IHRA." *Nischan v. Stratosphere Quality, LLC*, 865 F.3d 922, 934 (7th Cir. 2017) (internal citation and brackets omitted) (quoting *Blount v. Stroud*, 904 N.E.2d 1, 9 (Ill. 2009)). Under this standard, "the key to preemption is not whether the facts that support a common law tort claim (like intentional infliction of emotional distress) would also support a claim under the Human Rights Act, but rather whether the plaintiff can prove the elements of the tort "independent of any legal duties created by the Illinois Human Rights Act." *Richards*, 869 F.3d at 564 (emphasis omitted) (quoting *Maksimovic v. Tsogalis*, 687 N.E.2d 21, 24 (Ill. 1997)).

As defendants point out in their reply memorandum, ECF No. 137 at 3, Palmer responded to their argument concerning the elements of her IIED claim but not to their IHRA preemption arguments. *See* ECF No. 132 at 15–17. Palmer's failure to counter defendants' well-developed IHRA preemption arguments results in her IIED claim being deemed abandoned at summary judgment, which independently justifies dismissing it. *See, e.g.*, *Palmer v. Marion Cnty.*, 327 F.3d 588, 597–98 (7th Cir. 2003); *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 922–23 (7th Cir. 1994); *Bhd. of Maint. of Way Emps. Div./IBT v. Norfolk S. Ry. Co.*, 903 F.Supp.2d 583, 597–98 (N.D. Ill. 2012).

Palmer relies on identical evidence and conduct–White's alleged sexual harassment and disparate treatment of Palmer and other female police officers–to support her IIED and Title VII

claims.  *See* Pl. Jt. Resp. Opp'n Summ. J. 15–17, ECF No. 132.  This evidence and conduct facially falls within the compass of the IHRA.  *See id.*  Thus, to the extent it is possible to analyze preemption in the absence of an argument from Palmer, "her intentional-infliction-of-emotional-distress and IHRA claims are one and the same," meaning that her IIED claim is preempted.  *Nischan*, 865 F.3d at 934 (citing *Schroeder v. RGIS, Inc.*, 992 N.E.2d 509, 518–19 (Ill. App. Ct. 1st Dist. 2013)) (also available at 2013 IL App (1st) 122483 ¶ 29).

## V. Conclusion

For the reasons stated, defendants' motions for summary judgment are granted in part.  Plaintiff's intentional infliction of emotional distress claim is dismissed.  Within 21 days, Palmer is authorized to file a surresponse to defendants' objections to her other bad acts evidence.  *See* Reply 1–5, ECF No. 136.  A surreply, if any, will be due 14 days thereafter.

Dated:  March 30, 2024                              /s/ Joan B. Gottschall
                                                    United States District Judge

10