IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KYUNG PALMER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 20-cv-2603 |
| v. | ) | |
| | ) | Honorable Joan B. Gottschall |
| CITY OF MARKHAM and | ) | |
| TERRY WHITE, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

After she was laid off from her job as a part-time police officer in 2019, Kyung Palmer filed this civil action against her former employer, the City of Markham, Illinois, and its former Police Chief, Terry White. Palmer, a woman, brings claims against the City under Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. §§ 2000e *et seq.*, for (1) "sex discrimination and harassment," and (2) retaliatory discharge, as well as a state-law claim against White for intentional infliction of emotional distress. *See* Am. Compl. ¶¶ 18–25, Feb. 9, 2021, Dkt. No. 34. Palmer's intentional infliction of emotional distress claim has been dismissed. Order dated Mar. 30, 2024, at 10, Dkt. No. 140, clarified, Dkt. No. 146. The City's fourth motion for summary judgment is before the court.[1] Dkt. No. 159. For the reasons discussed herein, the City's motion for summary judgment is granted.

### I. SUMMARY JUDGMENT STANDARD

When a summary judgment motion is filed, "the court has one task and one task only: to decide . . . whether there is any material dispute of fact that requires a trial." *Johnson v. Advoc. Health & Hosps. Corp.*, 892 F.3d 887, 893 (7th Cir. 2018) (quoting *Payne v. Pauley*,

---

[1] This case has been stalled at the summary judgment stage for nearly four years due to intervening changes in the law and the parties' repetitive failures to comply with this court's local rules. *See* Order dated Feb. 24, 2023, Dkt. No. 113; Order dated Mar. 30, 2024, at 10, Dkt. No. 140, clarified, Dkt. No. 146; Order dated Mar. 31, 2025, Dkt. No. 147; Min. Order dated July 30, 2025, Dkt. No. 158.

337 F.3d 767, 770 (7th Cir. 2003)).  A motion for summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  To show that a fact cannot be or is genuinely disputed, a party may cite "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."  Fed. R. Civ. P. 56(c)(1)(A); *see also* Fed. R. Civ. P. 56(c); N.D. Ill. LR 56.1.

At summary judgment, "facts must be viewed in the light most favorable to," and all reasonable inferences from the evidence must be drawn in favor of, the nonmoving party—but "only if there is a genuine dispute as to those facts."  *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citation modified).  After a properly supported motion for summary judgment is made, the adverse party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial."  *Liberty Lobby*, 477 U.S. at 250 (quotation omitted).  Thus, summary judgment is warranted when the nonmoving party cannot establish an essential element of its case on which it will bear the burden of proof at trial.  *Kidwell v. Eisenhauer*, 679 F.3d 957, 964 (7th Cir. 2012).

## II. FACTS

The following facts are either undisputed or recited in the light most favorable to Palmer with reasonable inferences drawn in her favor.  The "City of Markham is a suburban municipality south of the City of Chicago governed by an elected mayor and city council."  Pl.'s Resp. City's Stmt. of Facts ¶ 4, Dkt. No. 164 [hereinafter RSOF].  Palmer, who earned a bachelor's degree in criminal justice, began working for the City as a part-time police officer in or around 2009.  *See* City Ans. to Compl. ¶ 8, Dkt. No. 59; Def.'s Resp. Palmer Stmt. of Add'l

Facts ¶¶ 3–4, 27, Dkt. No. 165-1 [hereinafter RSAF]; Palmer Dep. 11, City Ex. A PageID # 2585–2658, Dkt. No. 159-1.

Until July 2019, the City had part-time and full-time police officers. Between October 2018 and July 2019, the time period during which Palmer alleges she experienced discrimination, the City employed five full-time police officers and three part-time officers, including Palmer. *See* RSAF ¶ 1; RSOF ¶¶ 22, 64. A city ordinance capped part-time officers' allowed working hours to thirty per week. *See* City Ex. I PageID # 2731. As discussed below, there is evidence that part-time officers sometimes worked more than thirty hours per week, notwithstanding the City ordinance. *See, e.g.*, IDHR Findings Re Hours Worked, Pl. Ex. 8, Dkt. No. 163-8. During the relevant time period, City police officers were scheduled to work one of three eight-hour shifts per day. RSOF ¶ 4.

Palmer's claims stem primarily from the tenure of Police Chief Terry White, who is a man. White has a long and complicated employment history (dating to 1991 or 1992) with the Markham Police Department, which need not be described in detail. *See* RSOF ¶ 5; RSAF ¶ 23. White became Police Chief in October 2018. *See id.* Not long after he became chief, White said at a shift roll call that his tenure "will be a 'nightmare' for some of you, but for others it will be great." RSOF ¶ 75. White denies making this statement and other disparaging and hostile remarks attributed to him by Palmer and other female witnesses. *See* RSOF ¶ 76 (citing White Dep. 60, 68:14–69:1, City Ex. B, Pl. Ex. 2). According to Palmer's deposition testimony, White at various times (not further specified at her deposition) made remarks to the effect that he would make the job unbearable for female police officers, that women in general should not be police officers, and that he considered Palmer in particular to be "stupid." *See* RSOF ¶¶ 71–76; *see also* RSAF ¶ 35 (alleging White made inappropriate insinuations about Palmer's sexual orientation). Whether White made the hostile and disparaging statements attributed to him is genuinely disputed. *See id.* To the extent necessary, these disputes must be resolved in Palmer's favor for summary judgment purposes.

3

### A. Allegedly Discriminatory Acts

Part-time Markham police officers were ineligible for overtime pay. *See* RSOF ¶¶ 52–53, 58. Resolving contested facts in Palmer's favor, before White's tenure, part-time officers were nevertheless permitted to "bank" comp time when they worked extra hours. *See* RSOF ¶¶ 51–58. Palmer sought to use eighty hours of banked comp time on at least three occasions during White's tenure, but he denied her requests on the ground that he had no record of her having banked the time.[2] *See* RSOF ¶¶ 57–58; RSAF ¶ 9. Palmer cites no evidence showing that any other part-time officer sought to use comp time after White became Police Chief or that records existed supporting her claim to have banked comp time. *See id.*

To enforce the city's 30-hour weekly limit, White altered all part-time officers' work schedules when he took office so that each part-time officer was scheduled to work 24 hours per week. *See* RSAF ¶ 9; RSOF ¶ 3. Palmer's weekly working hours fell from 32 to 24 as a result. *See* RSOF ¶ 2. One part-time officer, Gerald Jackson, to whom Palmer compares her treatment, did not have his hours reduced. It is undisputed that the City settled an unspecified Illinois Department of Human Rights charge filed by Jackson, and that as a part of the settlement agreement, Jackson was promoted to a full-time officer position in October 2018. *See* RSAF ¶¶ 9–10. Palmer contends that she had more seniority, was better qualified than Jackson to be a full-time officer, and asserts in this case that his promotion was discriminatory. *See* RSOF ¶ 27. Jackson's promotion was contingent upon his being certified by Illinois's Law Enforcement Training and Standards Board to serve as a full-time officer. *See* RSAF ¶¶ 9–10. Jackson did not obtain certification and was eventually terminated. *Id.* It is unclear on this record, but a reasonable jury could find that his termination occurred sometime after the July 3, 2019, layoff, explained below.

---

[2] Palmer cites her Exhibit 18 in support of her contention that other officers were allowed to "bank" comp time. RSOF ¶ 57. The cited exhibit is not among the current round of summary judgment exhibits, though it appears on plaintiff's exhibit list. *See* Pl. Ex. List, Dkt. No. 163; Dkt. No. 163-1 to 163-16 (missing exhibits 11 and 18, though Exhibit 11 is marked as intentionally omitted). Because it is obviously the exhibit plaintiff intended, the court has considered the statement of Eric Blohm submitted as plaintiff's Exhibit 18 with her first round of summary judgment papers. Dkt. No. 99-17.

Palmer also alleges that White discriminated against her by reassigning her from certain duties regularly given to Markham police officers. First, the City acquired a roller rink in 2016, which it operated on Saturdays. *See* RSOF ¶¶ 8, 46. The City assigned police officers to work at the rink on Saturday evenings. *Id.* Palmer sent White a memorandum dated October 18, 2018, advising him that she was unavailable to work Friday–Sunday due to childcare obligations. *See* City Ex. J PageID # 2732, Dkt. No. 159-1; RSOF ¶¶ 17, 49.

Also, officers were sometimes assigned to work at a senior center (sometimes referred to in this record as a "senior building"), where the assigned officer also reviewed red light camera footage. *See* RSAF ¶ 16; RSOF ¶¶ 41–42. Third, a Markham police officer was assigned to City Hall on weekdays as a security measure. *See* RSOF ¶¶ 31–33. Finally, the officer assigned to City Hall also attended monthly municipal court call days to maintain order. RSOF ¶ 40. White reassigned Palmer to be a patrol officer and no longer tasked her with working at City Hall, the monthly municipal court call, the roller rink, or the senior center, replacing her with male officers. RSAF ¶ 25.

Palmer points to evidence of several other allegedly discriminatory acts. She complains, for instance, that she was denied the opportunity to participate in active shooter training attended by male officers. *See* RSOF ¶¶ 67–68; RSAF ¶ 32. She also cites deposition testimony of full-time Markham police officers—depositions apparently taken in other lawsuits—alleging discriminatory treatment by White.[3] *See* RSAF ¶¶ 24–27.

### B. Charge of Discrimination and Termination

Palmer filed two charges of discrimination with the Illinois Department of Human Rights (IDHR). The first, dated March 14, 2019, was filed approximately three months before the City terminated her employment. City Ex. D PageID # 2693. Palmer alleged four discriminatory acts occurring between October 1, 2018, and March 20, 2019: (1) White reduced Palmer's working

---

[3] The parties devote a not insubstantial portion of their briefing to the question of the admissibility of this evidence as "other acts" evidence under Rule 404(b) of the Federal Rules of Evidence. It is unnecessary for the court to resolve questions of the admissibility of this evidence because the result would be the same here with or without it.

hours from 32 to 24 hours per week but did not reduce the hours of similarly situated male co-workers; (2) White changed Palmer's schedule, meaning the days of the week on which she worked; (3) White removed Palmer from two special assignments, one at City Hall and the other at the city-owned roller rink, and replaced her with male officers;[4] and (4) White denied Palmer, but not male co-workers, the benefit of paid comp time on specified dates. *See* RSOF ¶ 2; City Ex. D PageID # 2693–96. Palmer's second charge of discrimination, dated December 5, 2019, alleged the City fired her in retaliation for filing her first IDHR charge and that her termination also constituted discrimination based on her sex. *See* RSOF ¶ 2; City Ex. E PageID # 2702–04.

It is undisputed that the City laid off all part-time officers, including Palmer, on July 3, 2019. *See* RSOF ¶¶ 63, 66. White did not participate in this decision, which the city council and the City's treasurer made for budgetary reasons. RSOF ¶ 63. White's termination letter to Palmer dated July 3, 2019, cited fiscal constraints as the reason that Palmer's part-time officer position was being "eliminated" from the City budget along with all other part-time positions. City Ex. L at 1 PageID # 2744. There is evidence from which a jury could find that the City continued to employ Jackson after July 3, 2019, until he failed to obtain certification to serve as a full-time police officer.[5] *See, e.g.*, RSOF ¶ 63.

Based on the layoff's timing, Palmer testified at her deposition that she believed (she had no specific evidence for this) that the layoff was a retaliatory act for the filing of her IDHR charge, which she believed the City had recently received. *See* RSOF ¶ 61 (citing Palmer Dep. 181–84, Pl. Ex. 1, Dkt. No. 163-1). The parties cite no evidence indicating when the City

---

[4] Palmer testified that she was removed, on a date she could not recall, from duties at the City's senior center. *See* RSOF ¶¶ 30, 41–45; Palmer Dep. 119, 128–34, Pl. Ex. 1, Dkt. No. 163-1. Palmer did not reference the senior center reassignment in either of her IDHR charges, so she has failed to exhaust her Title VII claim based on this allegedly discriminatory reassignment.

[5] Plaintiff relies in part on a photograph she contends shows Jackson wearing a City of Markham police officer's uniform after July 3, 2019. Pl. Ex. 17, Dkt. No. 163-16. The photograph shows a man with his back turned to the camera and his head inclined slightly to the left. Neither the man's clothing nor his face can be made out in the photograph, however. *See id.* Palmer testified at her deposition that she did not know the photograph was taken or who took it, but, for reasons she did not explain, she stated that the photograph showed Jackson at a Walmart. *See* Palmer Dep. 197:7–199:10. This photograph has not been adequately authenticated. *See* Fed. R. Evid. 1002–03.

received Palmer's first charge, and Palmer points to no other evidence linking the filing of her IDHR charge, or its receipt, to the City's decision to lay off all part-time police officers.

### III. ADMINISTRATIVE EXHAUSTION

The City first maintains that Palmer failed to exhaust many of the Title VII claims pleaded in her amended complaint, including her hostile work environment allegations, before she filed this lawsuit. Title VII requires a plaintiff to exhaust her administrative remedies by filing a charge of discrimination with the Equal Employment Opportunity Commission (EEOC), or as here a designated state agency, as a precondition to filing suit. *See* 42 U.S.C. § 2000e-5(f)(1); *Fort Bend Cnty. v. Davis*, 587 U.S. 541, 544–45 (2019); *Huri v. Off. of the Chief Judge of the Cir. Ct. of Cook Cnty.*, 804 F.3d 826, 831 (7th Cir. 2015) (citing *Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 634 (7th Cir. 2013)). The EEOC and IDHR have a working arrangement under which a charge of discrimination filed with the IDHR is deemed cross-filed with the EEOC and vice versa. *Cervantes v. Ardagh Grp.*, 914 F.3d 560, 564 n.5 (7th Cir. 2019) (citing *McQueen v. City of Chicago*, 803 F.Supp.2d 892, 902–03 (N.D. Ill. 2011)). The charge-filing requirement "affords the employer some notice of the conduct underlying the employee's allegation. It also 'affords the agency and the employer an opportunity to attempt conciliation without resort to the courts.'" *Id.* at 564 (quoting *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1110 (7th Cir. 1992)).

Because non-lawyers draft most charges of discrimination, "a Title VII plaintiff need not include in her charge every fact that, individually or in combination, forms the basis of a subsequent lawsuit's claims." *Huri*, 804 F.3d at 831. To be actionable in a lawsuit, a claim of discrimination or retaliation need only be "like or reasonably related to the allegations of the charge [of discrimination] and growing out of such allegations." *Id.* (quoting *Babrocky v. Jewel Food Co.*, 773 F.2d 857, 865–66 (7th Cir. 1985)); *accord Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994).

Palmer responds to the City's exhaustion arguments in a single sentence. *See* Mem. Opp'n Summ. J. 11, Dkt. No. 162 (citing *Huri*, 804 F.3d at 831–32). She contends that she properly exhausted all of her claims because they "implicate the same individuals (Chief White and his command staff) as her discrimination claim." *Id.* Implicating the same individuals is necessary but not sufficient. "The relevant claim and the EEOC charge must, at a minimum, describe the same conduct and implicate the same individuals." *Huri*, 804 F.3d at 831–32 (citation modified) (citing *Moore v. Vital Prods.*, 641 F.3d 253, 257 (7th Cir. 2011)). Palmer's IDHR charges do not describe all of the conduct alleged in her federal complaint. Together, the IDHR charges identify Palmer's discharge and four specific discriminatory actions as the bases of her retaliation and sex discrimination claims. The charges do not reference, expressly or by implication, the amended complaint's allegations of sex-based harassment by White and other male police officers; a hostile work environment; Palmer's loss of a monthly court call assignment; her allegations of lost promotion opportunities;[6] or her allegations of lost training opportunities, specifically active shooter training.[7] *See* City Ex. D–E PageID # 2693–705, Dkt. No. 159-1; RSOF ¶¶ 2–3, 67–70; RSAF ¶ 32; City Suppl. Mem. Supp. Summ. J. 9, 13–14, Dkt. No. 159-2.

"An employer creates a hostile work environment when 'the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'"

---

[6] Though the merits of Palmer's failure to promote claim need not be reached, that claim appears to be a non-starter. Among other things, a Title VII failure to promote claim requires the plaintiff to show that she "applied for the position." *Riley v. Elkhart Cmty. Schs.*, 829 F.3d 886, 892 (7th Cir. 2016). In a portion of her deposition not cited by the parties, Palmer testified that she did not apply for, or express interest in, being promoted to a full-time police officer position. *See* Palmer Dep. 108–11. She further testified that she did not complain or express dissatisfaction to anyone about Jackson's selection. *See* Palmer Dep. 110:15–18.

[7] The summary judgment record contains the IDHR's written factual findings issued when it dismissed Palmer's first charge of discrimination. City Ex. F PageID # 2706–23, Dkt. No. 159-1. Palmer does not argue that anything in the IDHR's findings indicates that its investigation included a hostile work environment claim, a failure to promote claim, or the other unexhausted claims alleged in her amended complaint. This court has reviewed the IDHR's findings but has located nothing suggesting that the scope of the investigation expanded to include one or more of Palmer's unexhausted claims.

*Hambrick v. Kijakazi*, 79 F.4th 835, 842 (7th Cir. 2023) (quoting *Alexander v. Casino Queen, Inc.*, 739 F.3d 972, 982 (7th Cir. 2014)).  A charge need not use magic words to give notice of a hostile work environment claim.  *See Huri*, 804 F.3d at 832; *Hildebrandt v. Ill. Dep't of Nat. Res.*, 347 F.3d 1014, 1032–33 (7th Cir. 2013).  The Seventh Circuit has held that the following language in a charge of discrimination was sufficient: "During my employment, I have been subjected to harassment because of my religion and national origin.  I filed internal complaints and the harassment continued."  *Huri*, 804 F.3d at 831 (quoting the plaintiff's charge of discrimination).

Neither of Palmer's charges filed with the IDHR alleges harassment or ongoing conduct, however.  Palmer's IDHR charges, even construed liberally, frame each act of alleged discrimination or retaliation as discrete and separate.  *See* City Ex. D–E PageID # 2693–705, Dkt. No. 159-1.  No reference is made in the charges, for instance, to White's alleged statements about female police officers, and there is no suggestion of a pattern of ongoing harassment.  *See* RSOF ¶¶ 2–3, Dkt. No. 164; City Ex. D–E PageID # 2693–705.  Construed liberally, then, the IDHR charges did not give the EEOC or Palmer's employer the notice Title VII requires.  *See Cervantes*, 914 F.3d at 564–66; *Moore*, 641 F.3d at 257; *Cheek*, 31 F.3d at 500–01.

Accordingly, the court dismisses Palmer's Title VII claims to the extent they are predicated on alleged discriminatory and retaliatory acts beyond the scope of the allegations made in her IDHR charges dated March 14 and December 5, 2019.  This dismissal includes Palmer's claims premised on a hostile work environment, lost training opportunities, lost promotion opportunities, and reassignment from the City's monthly court call.

### IV. UNEXHAUSTED TITLE VII CLAIMS

### A. Retaliatory Termination

Title VII's anti-retaliation provision forbids an employer from retaliating against an employee because she "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing."  *Lesiv v. Ill. Cent. R.R. Co.*, 39 F.4th 903, 911 (7th Cir.

2022) (quoting *Igasaki v. Ill. Dep't of Fin. and Pro. Regul.*, 988 F.3d 948, 959 (7th Cir. 2021)). Palmer alleges that the City terminated her employment on July 3, 2019, in retaliation for filing her first IDHR charge of discrimination in March of that year. *See* RSOF ¶ 61; Am. Compl. ¶¶ 13, 22–25, Dkt. No. 34. "To survive summary judgment on a retaliation claim, a plaintiff must offer evidence of: '(1) a statutorily protected activity; (2) a materially adverse action taken by the employer; and (3) a causal connection between the two.'" *Ontiveros v. Exxon Mobil Corp.*, 148 F.4th 521, 529 (7th Cir. 2025) (quoting *Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 718 (7th Cir. 2018)).

The first two elements are not in dispute. Palmer engaged in protected activity by filing a charge of discrimination with the IDHR in March 2019. That is paradigmatic activity Title VII insulates from retaliation. *E.g., Coleman v. Donahoe*, 667 F.3d 835, 859 (7th Cir. 2012). There is no dispute that terminating Palmer's employment in July 2019 was an adverse employment action (nor could there be). RSOF ¶¶ 2, 60–61.

The City argues that Palmer has not come forward with enough evidence to permit a reasonable jury to find for her on causation because she was let go as part of a non-retaliatory layoff of all part-time City police officers ordered by the City council for budgetary reasons. *See* RSOF ¶¶ 59–60. The record supports the City's factual position. White's termination letter to Palmer stated that she was being terminated due to budget cuts. City Ex. L PageID # 2744, Dkt. No. 159-1. Palmer does not dispute that she lost her job as part of a layoff approved by the City council. She argues instead that a reasonable jury could conclude that the layoff was a pretext for retaliation.

To survive summary judgment on the causation element of her Title VII retaliation claim, Palmer must "offer evidence that a retaliatory motive was a but-for cause of the challenged employment action," a standard that "requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Lesiv*, 39 F.4th at 915 (citation modified) (quoting *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338,

10

360 (2013)). To carry this burden, Palmer points to her own deposition testimony and to the City's treatment of Jackson.

Palmer testified at her deposition that she found the layoff's timing to be suspicious because rumors of possible layoffs began circulating soon after she believed the City received her first charge of discrimination. RSOF ¶ 61 (undisputed, citing Palmer Dep. 181:3–14, Pl. Ex. 1, Dkt. No. 163-1). The parties cite no evidence shedding light on when or how the layoff decision was made or on when the City received Palmer's first IDHR charge of discrimination. Palmer does not say when she began hearing rumors of layoffs, making it impossible on this record for the court to evaluate independently her claim of suspicious timing. *See* RSOF ¶¶ 59– 67. Palmer's conclusory deposition testimony rests entirely on her speculation about the City's timing and pretextual motives for the July 3, 2019, layoff. *See* Palmer Dep. 183:3–14. Palmer's conclusory testimony does not create a genuine dispute for trial because a plaintiff who offers unsupported, conclusory "speculation to suggest that [her employer's] explanations are pretextual . . . is insufficient" to create a genuine dispute. *Naficy v. Ill. Dep't of Hum. Servs.*, 697 F.3d 504, 513 (7th Cir. 2012) (citing *Overly v. KeyBank Nat'l Ass'n*, 662 F.3d 856, 864 (7th Cir. 2011)).

Palmer also attempts to create a fact issue on causation by comparing herself to Jackson, whom the City did not lay off. When a plaintiff compares her treatment to the treatment another employee received, the other employee must be "situated similarly enough for a reasonable comparison" giving rise to an inference of retaliatory motive. *Lesiv*, 39 F.4th 903, 919 (7th Cir. 2022) (quoting *Johnson v. Advoc. Health & Hosps. Corp.*, 892 F.3d 887, 895 (7th Cir. 2018)). To satisfy the similarly situated standard, the plaintiff and comparator ordinarily must have "dealt with the same supervisor, been subject to the same standards, and have engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Id.* (quoting *Donley v. Stryker Sales Corp.*, 906 F.3d 635, 639 (7th Cir. 2018)). In short, "for the purposes of analyzing a Title VII retaliation claim, the employees must be 'directly comparable in all material respects.'" *Hudson v. Chi.*

11

*Transit Auth.*, 375 F.3d 552, 561 (7th Cir. 2004) (quoting *Ajayi v. Aramark Bus. Servs.*, 336 F.3d 520, 531–32 (7th Cir. 2003)).

Palmer has not come forward with enough evidence to permit a reasonable jury to find that she and Jackson were directly comparable in all material respects because, as Palmer puts the matter in her statement of additional material facts she contends are undisputed, Jackson had been "promoted to a full-time officer" position in October 2018. RSAF ¶ 9. Indeed, the undisputed evidence, including Palmer's deposition testimony, establishes that, as part of a settlement of a claim Jackson filed with the IDHR, the City promoted him in October 2018 to a full-time police officer role on the condition that he had to complete the process of being certified to work as a full-time police officer. *See* Palmer Dep. 100; White Dep. 92, Pl. Ex. 2, Dkt. No. 163-2.

When the layoff occurred, Jackson was pursuing that certification, and the uncontested evidence shows that the City later terminated his employment when he failed to obtain the required certification. *See* RSOF ¶¶ 65–66; White Dep. 86, 92. Since Jackson was promoted to a full-time position approximately nine months before the City laid off all part-time officers, including Palmer, he is not a valid comparator for purposes of Palmer's retaliatory discharge claim. *See, e.g.*, *Lesiv*, 39 F.4th at 919; *Hudson*, 375 F.3d at 561. Palmer directs the court to no other evidence from which a reasonable jury could find a causal link, that is, a but-for relationship, between the filing of her IDHR charge in March 2019 and her termination. *See* Mem. Opp'n Summ. J. 13–14, Dkt. No. 162. She has failed to create a genuine dispute of material fact, and her Title VII retaliation claim is accordingly dismissed.

### B. Sex-Based Discrimination

Title VII makes it unlawful "for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). The court ruled in Part III, *supra*, that

12

Palmer failed to exhaust several of the discrimination claims alleged in her amended complaint. Four adequately exhausted claims remain pending: (1) the reduction from 32 to 24 of Palmer's scheduled weekly hours; (2) the change to Palmer's weekly schedule, specifically the days of the week on which she was regularly scheduled to work; (3) Palmer's reassignment from duties at City Hall and the City-owned roller rink; and (4) White's denial of comp time to Palmer.

The City first argues that none of these acts rises to the level of an alteration of the terms and conditions of Palmer's employment for Title VII purposes. 42 U.S.C. § 2000e-2(a)(1). While this case was pending, the Supreme Court decided *Muldrow v. City of St. Louis*, in which it made clear that "terms [and] conditions of employment" in Title VII "is not used 'in the narrow contractual sense'; it covers more than the 'economic or tangible.'" 601 U.S. 346, 347 (2024) (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 78 (1998)). Reversing a grant of summary judgment to an employer, the *Muldrow* court held that a Title VII plaintiff does not have to prove that a job transfer caused her harm that was "significant, or serious, or substantial, or any similar adjective suggesting that the disadvantage to the employee must exceed a heightened bar." *Id.* at 355 (citation modified). A Title VII plaintiff, by contrast, need show only "some harm respecting an identifiable term or condition of employment." *Id.*; *accord Thomas v. JBS Green Bay, Inc.*, 120 F.4th 1335, 1336–37 (7th Cir. 2024).

Before *Muldrow*, the Seventh Circuit had held that "schedule changes and reprimands without material consequences . . . generally do not constitute adverse employment actions" for Title VII purposes. *Porter v. City of Chicago*, 700 F.3d 944, 955 (7th Cir. 2012) (citing *Lloyd v. Swifty Transp., Inc.*, 552 F.3d 594, 602 (7th Cir. 2009)). Following *Muldrow*, this court directed the parties to rebrief summary judgment, specifically, the contested issue of what constitutes an adverse employment action, and they have done so. Order dated March 31, 2025, Dkt. No. 147.

The Seventh Circuit has since held that *Muldrow*'s "some harm" standard for identifying adverse employment actions applies broadly, not just in the context of job transfers. *Arnold v. United Airlines, Inc.*, 142 F.4th 460, 471 (7th Cir. 2025) (citing *Thomas*, 120 F.4th at 1336–37). Thus, "[d]elaying training, denying vacation times, transferring shifts, and considering family

13

circumstances in a biased way are all adverse actions" after *Muldrow* "because employers 'must distribute fringe benefits equally' and 'deferred training can mean deferred promotions or deferred raises.'" *Arnold*, 142 F.4th at 471–72 (citation modified) (quoting *Thomas*, 120 F.4th at 1336–37).

The Seventh Circuit applied *Muldrow*'s "some harm" standard in *Arnold*. *See also Thomas*, 120 F.4th at 1336–37. The plaintiff in *Arnold* worked for a large airline as a communications professional. *Arnold*, 142 F.4th at 466–67. In retaliation for reporting alleged sexual harassment by a former supervisor, the company, according to the plaintiff, later transferred her and her team to the corporate communications department, placed her on a Performance Improvement Plan (PIP), and changed her title from Senior Staff Representative to Senior Writer, resulting in less visibility inside and outside the company. *Id.* at 468. Regarding these changes, the parties agreed at summary judgment that while "some of Arnold's roles and responsibilities changed, the basic function of those positions was the same." *Id.* at 467 (citation modified). The Seventh Circuit held that the *Arnold* plaintiff did not satisfy the *Muldrow* "some harm" standard. *Id.* at 471–72. In affirming summary judgment for the employer, the Seventh Circuit reasoned that, even viewing the evidence in the light most favorable to the plaintiff, she could "maintain only that she was placed on a PIP and that the reorganization brought about some changes in her daily responsibilities. She remained a member of the same team and continued to work in the communications department . . . . Her compensation, benefits, vacation times, and working hours were not affected." *Id.* at 471. The employer's changes, including those implemented by the PIP, explained the court, "were all within the normal scope of [the plaintiff's] employment and thus did not adversely affect the terms and conditions of her employment." *Id.*

With the *Muldrow* standard in view, the court turns to the summary judgment record in the case at hand. Palmer cites no evidence tending to show that the City Hall or the roller rink assignments were de facto fringe benefits or that she lost training opportunities or other meaningful career advancement opportunities when she was reassigned from these duties. Nor

14

does Palmer point to any evidence that the change to the days of the week on which she worked was viewed by her or by her fellow police officers as less desirable or as a public dressing down. *Cf. Muldrow*, 601 U.S. at 359–60 (requiring the plaintiff to show "some harm" from a transfer). Indeed, Palmer's memorandum dated October 18, 2018, stated that she was unavailable to work on Saturdays, thereby ruling out roller rink duties on Saturday evenings. *See* City Ex. J at 1, PageID # 2732, Dkt. No. 159-1.

In the language of *Muldrow*, Palmer has not identified evidence as to the foregoing acts of alleged discrimination allowing a reasonable factfinder to find that she was "worse off" in terms of an identifiable term or condition of employment as a result of the change to her work schedule. *Muldrow*, 601 U.S. at 359; *see also Arnold*, 142 F.4th at 471–72; *Phillips v. Baxter*, 2024 WL 1795859, at *3 (7th Cir. Apr. 25, 2024) (unpublished). Accordingly, Palmer has failed to come forward with enough evidence to create a fact issue on whether her reassignments and the change to the days of the week on which she worked were adverse employment actions under *Muldrow*. The court therefore dismisses Palmer's Title VII claims predicated upon those two discrete claims.

On the other hand, denying comp time and reducing the number of hours per week an employee like Palmer is scheduled to work easily pass *Muldrow*'s "some harm" test. An hourly employee's number of scheduled hours dictates her take-home pay, a quintessential term of employment. Further, Palmer's claim that she was denied eighty hours of comp time satisfies the *Muldrow* "some harm" threshold because a reasonable jury could find on this record that the City had an established practice, effectively a fringe benefit, of allowing officers to bank and use comp time. *See Arnold*, 142 F.4th at 471–72; *Thomas*, 120 F.4th at 1337.

Nevertheless, these claims fail for other reasons. Palmer has identified no male police officer whom White allowed to use banked comp time. This claim fails for lack of a comparator. Regarding reduction of Palmer's scheduled weekly hours, she has not rebutted the City's asserted non-discriminatory reason for it, that being the City ordinance capping part-time officers at 30 hours per week. City Ex. I, Dkt. No. 159-1. The undisputed evidence confirms that in

15

October 2018, the City reduced the scheduled hours of all part-time officers (all the others were men) to 24 per week. RSAF ¶ 9; RSOF ¶ 3. Palmer offers Jackson as a comparator in an effort to create a fact issue on whether enforcing the city ordinance was a pretext for discrimination based on Palmer's sex.

Having reviewed the evidence, the court agrees that a reasonable factfinder could conclude on this record that Jackson was assigned to work 32 or more hours per week after October 2018. But, for the reasons discussed above, Jackson and Palmer are not similarly situated enough for Jackson to serve as an appropriate comparator because it is undisputed that Jackson was promoted in October 2018 to a full-time role pursuant to a settlement agreement he reached with the City. RSAF ¶¶ 9–10. On this record, Jackson's settlement agreement and promotion to a full-time position provide an unrebutted, non-discriminatory explanation for the greater number of hours he was given. Accordingly, Palmer has not created a fact issue on any of her Title VII discrimination claims.

### V. CONCLUSION

For the reasons stated, the City of Markham's motion for summary judgment, Dkt. No. 159, is granted. In separate orders, defendants the City of Markham and Terry White have been granted summary judgment. A single Rule 58 judgment dismissing both defendants will be entered separately.

Date: March 30, 2026

/s/ Joan B. Gottschall
United States District Judge

16